(No. 90-CC-1252– )

VICKI SOWIZROL, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed October 17, 1996.*

HEALY, MARTIN J. & ASSOC. (DAVID P. HUBER, of counsel), for Claimant.

JIM RYAN, Attorney General (ROBERT T. LANE, Assistant Attorney General, of counsel), for Respondent.

## OPINION

JANN, J.

This cause comes before the Court on Claimant Vicki Sowizrol's complaint, alleging negligence and seeking compensation from the Respondent State of Illinois for injuries she sustained, allegedly caused by a hole in Higgins Road. A hearing was conducted before Commissioner Hanley and the Claimant presented three witnesses. In addition, the parties agreed that Claimant could supplement the record with the evidence deposition of Dr. Daczewycz, Claimant's surgeon. Claimant presented

Claimant's exhibit nos. 10, 11, 12, 13 and 14, which were admitted into the record. Respondent did not present any witnesses. Respondent offered into evidence one exhibit which, based upon Claimant's objection, was not admitted into the record.

On August 5, 1988, Mrs. Sowizrol visited Schultz's True Value Hardware Store, at 7020 West Higgins Road, in Chicago. Higgins Road is an east/west street. Schultz's is on the north side of the street. Claimant parked her car legally in front of the store, and went inside with her nephew to exchange a part. Upon exiting the store to return to her vehicle, Mrs. Sowizrol stepped off the curb, and stated she was looking for traffic. She stumbled forward and heard a crack, as if she had stepped on a tree branch. She immediately felt pain in her left foot. She sat down on the curb, because she thought that she was about to faint.

Claimant identified four photographs marked as Claimant's exhibit nos. 13A, 13B, 13C and 13D. She identified the store, her car and the hole that she allegedly stepped in. Claimant's exhibit nos. 13A, 13B, 13C and 13D were admitted into the record without objection. Mrs. Sowizrol returned to the store, with the aid of her nephew, where an ambulance was called, and she was *subsequently* taken to Resurrection Medical Center's emergency room.

At Resurrection Medical Center, x-rays were taken which revealed a comminuted, or fragmented, fracture to the base of the fifth metatarsal, a bone on the outside of the left foot, near the joint. The fifth metatarsal is a weight-bearing bone, as described by Dr. Daczewycz. Mrs. Sowizrol was seen by Dr. Roman Daczewycz, an orthopedic surgeon, at the emergency room. A cast was applied to the foot and continued up to the knee. Prescription pain

medication was prescribed, and Mrs. Sowizrol was instructed to use crutches and released.

The crutches seriously interfered with Claimant's ability to function. At the time of her injury, Mrs. Sowizrol had a one-year old infant at home. She was unable to care for her child or family or perform her normal household duties while on crutches. Her mother assisted her by moving in to live with the Sowizrols. Mrs. Sowizrol's mother helped to care for the children and with tasks around the house, such as managing the household, cleaning and preparing meals.

After approximately six weeks, the cast was removed, and a removable ankle sleeve, or brace, was prescribed. Mrs. Sowizrol still walked with crutches and experienced pain while wearing the ankle sleeve. Dr. Daczewycz prescribed a course of physical therapy, which lasted for approximately two months, until November, 1988. After completing physical therapy, Mrs. Sowizrol still experienced pain, soreness and discomfort in her foot. After Claimant felt a growth on the side of her foot, Dr. Daczewycz examined her and discovered that a bone spur, or growth, was present at the site of the fracture. He opined that the spur was a result of the fracture. Dr. Daczewycz prescribed pain medication and a course of conservative treatment, including exercises and foot soaks. The pain in Mrs. Sowizrol's foot worsened, and she became unable to wear shoes or walk properly. She testified that her inability to walk properly caused back pain. Claimant returned to Dr. Daczewycz, discussed treatment options for her foot, and eventually decided to have surgery to remove the bone spur.

Dr. Daczewycz performed corrective surgery. After surgery, Mrs. Sowizrol could not walk and used crutches. She was again unable to care for her family or home. Her

mother returned to live with the Sowizrols in order to assist her. Mrs. Sowizrol continued to wear the ankle sleeve. After the surgery, Mrs. Sowizrol continued to experience back pain, and was seen by Dr. Daczewycz. Prescription pain medication was given and the back pain eventually subsided.

Dr. Daczewycz examined Claimant in September, 1994. She still experienced problems with her foot some six years after the initial injury. He noted that there was a recurrence of the bone spur, which was causing her continued pain. He also noted that the scar tissue and tissue thickening were causing nerve entrapment, resulting in pain in her leg and foot. He advised her to begin strengthening exercises and prescribed pain medication.

Mrs. Sowizrol still has significant problems resulting from her injury. She experiences aching, pains and cramping in her foot and leg. This pain becomes worse with use, and she can only walk approximately one to two blocks before her foot begins bothering her. She has a scar on her foot, which causes her discomfort and requires frequent massage to alleviate pain.

Claimant's group exhibit no. 14, indicating medical expenses in the sum of $7,193.58, was admitted into the record without objection.

Robert Callbeck, chief engineer for the city of Chicago, testified that he is familiar with the entity responsible for street maintenance on streets and roads within the city of Chicago. He testified that the State of Illinois is responsible for the maintenance of Higgins Road at 7020 West Higgins Road, in Chicago. He further testified that the State's responsibility encompasses travel lanes, parking lanes, curbs and gutters at that location.

Claimant's exhibit nos. 10, 11 and 12, containing an affidavit by Mr. Callbeck and documents in support thereof, were admitted into the record without objection.

Kenneth Sowizrol, Claimant's husband, testified that he is familiar with the condition of Higgins Road at 7020 West Higgins Road. He stated that holes are up and down the whole curb area. He took the photographs admitted into the record without his wife present. Mrs. Sowizrol later reviewed the photographs and identified the hole which allegedly caused her injury. Mr. Sowizrol "believed" that the hole Mrs. Sowizrol identified as the subject hole was present for at least two years prior to her fall. He testified that the hole was two to three inches deep.

## The Law

Claimant argues that she has presented ample evidence, on both liability and damages, and the Respondent has not presented evidence denying liability.

Claimant states that the evidence is clear that the Respondent breached its duty to maintain Higgins Road in a safe condition, and that its breach caused Mrs. Sowizrol's injuries. The State's duty is outlined in Claimant's exhibit nos. 10, 11 and 12, as explained by Mr. Callbeck. Claimant's exhibit no. 12 is a letter issued by Respondent, confirming that maintenance of Higgins Road was the responsibility of Respondent at the time in question. The testimony of Kenneth Sowizrol confirms that Respondent breached its duty by allowing a large, dangerous hole to remain unrepaired for at least two years before Claimant was injured.

Similarly, the evidence that Mrs. Sowizrol sustained a serious, permanent injury as a result of Respondent's alleged negligence is uncontradicted. Mrs. Sowizrol testified that she experienced pain, suffering and disability

since her injury. Dr. Daczewycz testified that Mrs. Sowizrol's problems, including the bone spur and its surgical removal, were caused by the fracture she sustained. He testified specifically that the fracture and subsequent problems were pain-producing. The fracture and its ensuing treatment required that Mrs. Sowizrol spend an extended period of time in a cast and on crutches. Over six years after Mrs. Sowizrol's initial injury, and after a long period of treatment, she still experiences significant pain, discomfort and disability as a result of this injury.

Dr. Daczewycz further testified that Mrs. Sowizrol sustained permanent injuries which will continue to plague her in the future. He testified that she has a recurrence of the bone spur, manifested by discomfort with weight-bearing and walking.

Mrs. Sowizrol requests that this court award her $75,000 as fair compensation for the past six years, and future life expectancy of 38 years of pain, suffering and disability, and for medical expenses incurred as a result of the Respondent's alleged negligence.

Claimant attached to her brief three exhibits (life tables and jury awards), which were not offered at the hearing, and shall not be considered by the Court.

Respondent argues that it owed no duty to the Claimant. Respondent claims it did not have notice of the alleged dangerous condition. The essential elements of a claim sounding in negligence are the existence of a duty of reasonable care owed Claimant by Respondent, breach of that duty, and injury proximately relating to that breach. *Magnone v. Chicago & North Western Transportation Co.* (1st. Dist., 1984), 126 Ill. App. 3d 170, 466 N.E.2d 1261, 1266.

Respondent argues that no evidence was presented to establish the State had notice of the hole that the

Claimant allegedly stepped into and which injured her foot. In order for Claimant to recover, she must prove that the State had actual or constructive notice of the dangerous condition that allegedly existed. (*Feldman v. State* (1984), 36 Ill. Ct. Cl. 158, 160.) The mere fact that a dangerous condition existed is not, by itself, sufficient to constitute an act of negligence on the part of the Respondent. (*Id.* at 161.) We agree that the ⌐as no evidence that the State had any actual notice of ⌐alleged hole that caused Claimant's injury. Claimant's husband testified that he may have mentioned the existence of the holes to the city alderman in passing. This recount of a possible mention of the problem to a city official would not constitute notice to the city, and does not put the State on notice. Further, no records of complaints regarding the alleged condition or State maintenance were introduced. It was not established that the State had constructive knowledge of the allegedly dangerous condition. It must be shown that the defect was substantial enough, and must have existed for such a length of time, that reasonable persons would conclude that immediate repairs should be made or, in the alternative, that warning signs be posted. (*Aetna Casualty & Surety Co. v. State* (1984), 37 Ill. Ct. Cl. 179, 181.) The Claimant's husband testified that there were holes up and down the curb in front of Schultz's True Value; however, there is no evidence that the State knew, or should have known, of the existence of the holes. There is no indication of how long the hole in question existed. The pictures offered at the hearing are not instructive. They offer no evidence of the age of the pictured hole, or whether there were any other holes in the area. Claimant has not established any evidence that the State knew, or should have known, of the alleged dangerous condition.

More importantly, Claimant offered no testimony of the Claimant's nephew, who allegedly observed the incident,

or the owner and employees of the store who could have given testimony as to the condition of the pavement and the length of time such condition, if defective, existed. Additionally, the "hole" which allegedly precipitated Claimant's injury, does not appear, from Claimant's photos, to constitute a defect of the nature to impose a duty of immediate repair and, thereby, imputed constructive knowledge to Respondent, or indicate a long-standing condition.

Based on the foregoing, this claim is hereby denied.